# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  **v.**                                           **Case No. 19-CR-86**

**ROY LEE CROCKETT**
        **Defendant.**

---

## DECISION AND ORDER

Defendant Roy Lee Crockett moves for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, I deny his motion.

### I. FACTS AND BACKGROUND

On or about March 31, 2019, law enforcement learned that defendant, a convicted felon, was teaching a class training people in the basics of armed self-defense, and a video of the class depicted him in the possession of firearms. (PSR ¶ 15.) On April 26, 2019, police arrested defendant at his workplace, finding 9mm handgun magazines and ammunition on his person and a 9mm handgun, a loaded magazine, and a Winchester 12-gauge shotgun shell in the vehicle he drove to work. (PSR ¶ 16.) When officers searched defendant's home, they seized two loaded shotguns, hundreds of rounds of ammunition, a set of body armor, two sets of handcuffs, multiple stun guns, multiple training pistols, multiple rifle magazines, and gun accessories. (PSR ¶ 17.) Defendant indicated that he obtained the weapons to ensure the safety and security of his faith community (PSR ¶ 26); he denied possessing them in relation to another criminal offense (PSR ¶ 30).

The government indicted defendant on felon in possession charges, 18 U.S.C. §

922(g)(1), further alleging that he qualified for an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on six prior felony convictions. (R. 8.) Pursuant to an agreement with the government, defendant pleaded guilty to a two count information. As part of the agreement, he admitted that his "two armed robbery and one armed carjacking convictions resulted from offenses that occurred on three different occasions." (R. 23 at 4 ¶ 5.) The parties agreed to recommend the mandatory ACCA sentence of 180 months imprisonment on both counts running concurrently. (R. 23 at 10 ¶ 24.) On October 6, 2020, I sentenced defendant to 180 months in prison. (R. 50.) He is currently serving his sentence at FCI Milan, with a projected release date of February 4, 2032.[1]

On October 25, 2021, defendant filed the instant motion for sentence reduction. (R. 64.) I referred the matter to Federal Defender Services ("FDS") for review pursuant to the court's standing order on First Step Act motions, but FDS declined to supplement the pro se submission. (R. 66.) The government then responded in opposition (R. 68), and defendant filed a reply (R. 69) and an additional submission discussing conditions at FCI Milan (R. 70). The matter is ready for decision.

## II. DISCUSSION

**A. Compassionate Release Standards**

Section 3582(c)(1)(A) authorizes the district court to grant what is commonly known as "compassionate release." The statute provides, in pertinent part:

---

[1]https://www.bop.gov/inmateloc/ (last visited Apr. 20, 2022). Defendant filed a notice of appeal from the judgment, and his direct appeal is pending. The Seventh Circuit had suspended briefing pending the Supreme Court's decision in Wooden v. United States, addressing the "on different occasions" issue. The Court decided Wooden on March 7, 2022, 142 S. Ct. 1063 (2022), and the Seventh Circuit recently set a briefing schedule.

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

A defendant seeking sentence reduction must first make a request to the warden before applying to the court. If this "exhaustion" requirement is satisfied, the defendant must demonstrate an "extraordinary and compelling" reason warranting a reduction in his sentence. The defendant bears the burden of establishing such reasons. United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021). If the district court finds that such reasons exist, it then must weigh the applicable sentencing factors under 18 U.S.C. § 3553(a) in determining whether to reduce the sentence. United States v. Thacker, 4 F.4th 569, 573 (7th Cir. 2021), cert. denied, 142 S. Ct. 1363 (2022).

## 1. Exhaustion

Before 2018, relief under § 3582(c)(1)(A) required a motion from the BOP. United States v. Sanford, 986 F.3d 779, 781 (7th Cir. 2021). The First Step Act of 2018 amended the statute to permit the court to adjudicate a motion directly from the defendant. However, the defendant must first present his request for release to the warden and exhaust administrative appeals (if the request is denied) or wait 30 days from the receipt of such a request by the

3

warden of the defendant's facility, whichever is earlier. Id. at 781-82. The Seventh Circuit has held that, while this "exhaustion" requirement is not jurisdictional, it is a mandatory claim-processing rule which must be enforced if raised by the government. Id. at 782.

### 2. Extraordinary and Compelling Reasons

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress stated that:

> The [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)   (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic

4

    lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

      (I) suffering from a serious physical or medical condition,

      (II) suffering from a serious functional or cognitive impairment, or

      (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

  (C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

  The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v.

5

Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

The Seventh Circuit has set some limits. In Thacker, for instance, the court held that the recent change to the "stacking" rule for 18 U.S.C. § 924(c) offenses provides no basis for sentence modification. In reaching this conclusion, the court explained:

> We harbor broader concerns with allowing § 3582(c)(1)(A) to serve as the authority for relief from mandatory minimum sentences prescribed by Congress. We see nothing preventing the next inmate serving a mandatory minimum sentence under some other federal statute from requesting a sentencing reduction in the name of compassionate release on the basis that the prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like. Rationales along those lines cannot supply an extraordinary and compelling reason to reduce a lawful sentence whose term Congress enacted, and the President signed, into law. Any other conclusion offends principles of separation of powers.

4 F.4th at 574.

Giving the statutory terms their common meaning, a defendant seeking sentence reduction must demonstrate that his situation is "extraordinary," i.e., beyond what is usual, customary, or regular, and his need for relief is "compelling," i.e., irreparable harm or injustice will result if relief is not granted. United States v. Scott, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020); see also Gunn, 980 F.3d at 1180 (noting that the Commission's analysis can guide the court's exercise of discretion without being conclusive). Most compassionate release motions continue to assert age, health, or family-related reasons.

In the context of the COVID-19 pandemic, courts have found that release may be

warranted if the prisoner demonstrates that he is particularly vulnerable to the virus based on his age, health status, or other specific circumstances, including the conditions at his facility; on the other hand, courts have tended to deny compassionate release requests based on general concerns about the pandemic in prison. See, e.g., United States v. Thomas, No. 1:11-CR-22, 2020 U.S. Dist. LEXIS 172963, at *6-7 (N.D. Ind. Sept. 22, 2020); United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020). "Courts have in evaluating medical conditions during the pandemic relied on guidance from the CDC, while also recognizing that each case must decided on its own facts." United States v. McMurtry, No. 16-CR-128, 2021 U.S. Dist. LEXIS 28233, at *11 (E.D. Wis. Feb. 16, 2021).

The analysis changed somewhat following the widespread distribution of vaccines, with the Seventh Circuit holding that:

> for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see also United States v. Barbee, 25 F.4th 531, 533 (7th Cir. 2022) (explaining "that COVID-19 was a grave problem in America's prisons at its outset because prisoners and staff cannot engage in social distancing. Today, however, effective vaccines are available[.]") (internal citation omitted); United States v. Kurzynowski, 17 F.4th 756, 760-61 (7th Cir. 2021) ("Vaccinated prisoners in 2021 do not face the same risks of serious illness as they did in 2020."); United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021) ("Today, however, vaccines provide a much better defense against infection than any judicial order could do."). Cf. United States v. Rucker, 27 F.4th 560, 563 (7th Cir.

7

2022) (noting that Broadfield "included a safety valve for prisoners to show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe infection, notwithstanding the vaccine").

Finally, while the statute provides that "rehabilitative efforts alone will not support compassionate release, the court may take such efforts into account as part of the analysis." United States v. Anderson, No. 14-CR-186, 2020 U.S. Dist. LEXIS 187983, at *13 (E.D. Wis. Oct. 8, 2020); see also United States v. Hudson, 967 F.3d 605, 613 (7th Cir. 2020) (noting that the court may in deciding a First Step Act motion consider the defendant's post-sentencing conduct as part of the § 3553(a) analysis).

### 3. Section 3553(a) Factors

If the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. See United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns."). Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v.

8

Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020).

Finally, while § 3582(c)(1)(A) motions generally seek immediate release, "the statute 'in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place.'" United States v. Davis, No. 15-CR-136, 2021 U.S. Dist. LEXIS 76537, at *8 (E.D. Wis. Apr. 21, 2021) (quoting Brooker, 976 F.3d at 37).

**B.     Defendant's Motion**

   **1.     Exhaustion**

Defendant applied to the BOP for a sentence reduction, and the warden at FCI Milan denied his request on August 20, 2021. (R. 64 at 2, 17.) More than 30 days have passed. Defendant thus satisfies the exhaustion requirement. The government does not argue otherwise.

   **2.     Extraordinary and Compelling Reasons**

Defendant seeks relief based on the harshness of his sentence, the COVID-19 pandemic, and his exemplary post-sentencing conduct. (R. 64 at 1.)

      **a.     ACCA Term**

Defendant first notes that the charge selected by the government required the court to impose a 15-year sentence under the ACCA. (R. 64 at 4.) At the sentencing hearing, I noted that my discretion to consider the § 3553(a) factors and the mitigating information presented by the defense was limited by the mandatory minimum, and defendant contends that I may have imposed a lower term had that been possible. (R. 64 at 4-5.) He further contends that his sentence is disparate compared to the typical ACCA defendant, who uses the firearm in

9

furtherance of another crime. (R. 64 at 5-6.) He concludes that the court's inability to impose a lower sentence constitutes an extraordinary and compelling reason for modification now. (R. 64 at 6.)

Defendant cites no authority permitting the court to reduce a mandatory sentence based on the contention that the resulting term is greater than necessary. As the Seventh Circuit noted in Thacker, "Rationales along those lines cannot supply an extraordinary and compelling reason to reduce a lawful sentence whose term Congress enacted, and the President signed, into law." 4 F.4th at 574. Nor does defendant cite any authority supporting sentence modification under § 3582(c)(1)(A) based on alleged disparity with other ACCA offenders. The ACCA applies even in mere "possession" cases; if defendant had used the firearms in connection with other criminal activity, he could have faced even greater penalties. See 18 U.S.C. § 924(c); U.S.S.G. § 4B1.4 cmt. n.2.

### b. COVID-19

Defendant next contends that, since he was sentenced, the COVID-19 pandemic has changed the circumstances of incarceration, including the fear of contracting a potentially deadly infection, increased punitive aspects of prison life, and decreased opportunities for rehabilitation due to pandemic-related lock-downs. (R. 64 at 7.) Defendant notes that some courts have relied on these changed circumstances to grant sentence reductions. (R. 64 at 8-10, collecting cases.) He concludes that the increased severity of his punishment due to the pandemic, combined with the other grounds he presents, constitute extraordinary and compelling reasons warranting immediate release or a proportional reduction in sentence. (R. 64 at 10-11.)

I first note that defendant was sentenced in October 2020, during the height of the

10

pandemic.² This is not a case (like those defendant cites) in which the court was unaware at the time of imposition of the conditions under which the defendant would likely serve the sentence imposed. In any event, while it may be appropriate for the court to consider as part of the analysis that "prison life has been harsher during the pandemic, [defendant] fails to explain how his experience has been altered." United States v. Crumble, No. 16-CR-102, 2021 U.S. Dist. LEXIS 97626, at *15 (E.D. Wis. May 24, 2021); see also Davis, 2021 U.S. Dist. LEXIS 76537, at *24 ("Davis develops no argument regarding the impact of the pandemic on his situation, instead relying on other cases and generalities about prison life."). In his motion, defendant relies on a number of cases from other circuits, without discussing the circumstances of his specific confinement. As one court noted in rejecting a similar argument,

> While prison life is atypical during this period, the BOP's modified operations place the same restrictions on each inmate. To find that the effects of modified operations constitute an extraordinary and compelling reason for a sentence reduction would undermine the BOP's comprehensive anti-COVID-19 measures, and undercut the specific criteria used to determine individual inmates' eligibility for sentence reductions.

United States v. Arafat, No. 12-cr-00045, 2021 U.S. Dist. LEXIS 158707, at *16-17 (D. Minn. Aug. 23, 2021).

Defendant also develops no argument that he is at greater risk from the virus based on his age (now 46) or health. In his motion, defendant states that he has diabetes, chronic kidney disease, and hypertension, CDC-identified medical risk factors. (R. 64 at 7.) However, he presents no medical evidence substantiating those conditions or his increased risk. Instead,

---

²As the government notes, defendant sought pre-trial release based in part on the pandemic. (R. 68 at 6.) I denied that request, noting that defendant presented no evidence that he was particularly vulnerable to COVID-19 due to age (then 44) or underlying health issues. (R. 42 at 4.)

11

he mentions these medical conditions as part of his argument that imprisonment during the pandemic causes increased mental hardship and anxiety. (R. 64 at 7.) Absent further factual development, defendant cannot obtain sentence modification based on the increased stress associated with the pandemic.

With its response, the government filed a copy of defendant's prison medical records, which indicate that defendant has pre-diabetes, but not diabetes. (R. 68-1 at 1, 9, 61.) "[P]re-diabetes has not been recognized by the CDC as a condition that increases the risk of severe illness from COVID-19, as numerous courts have noted." United States v. Meyer, No. 14-CR-230, 2020 U.S. Dist. LEXIS 199117, at *19 (E.D. Wis. Oct. 27, 2020) (collecting cases). The medical records also document "chronic kidney disease, stage 2 (mild)" and hypertension, on medication.[3] (R. 68-1 at 3, 5, 7.) The CDC has noted that "chronic kidney disease of any stage" and "possibly high blood pressure (hypertension) can make you more likely to get very sick from COVID-19."[4] Given these possible risk factors, the government questions why defendant twice refused the BOP's offer of the COVID-19 vaccine. (R. 68 at 1, 7; R. 68-1 at 58, 81, 84.) The government argues that this refusal precludes eligibility for compassionate release. (R. 68 at 7.) The government further notes that, as of the date of its response, the BOP reported no inmate COVID-19 cases at FCI Milan. (R. 68 at 8.)

---

[3]On June 23, 2021, defendant denied medication side effects, chest pain, or shortness of breath. "He denies any other complaints at this time." (R. 68-1 at 3.) The provider noted that defendant's blood pressure was going down; defendant did not want to increase his medication, wanting to work out and bring his blood pressure down. (R. 68-1 at 4.) On June 17, 2021, the provider ordered repeat lab work in six months regarding the kidney issue; it appears no further treatment was ordered. (R. 68-1 at 5.)

[4]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 20, 2022).

12

In reply, defendant states that his "argument concerns the increased punitive nature of his incarceration, not his risk of serious disease." (R. 69 at 3.) He contends that, because of his medical conditions, he is particularly vulnerable to fear and anxiety of catching COVID-19 in a prison setting. He further contends that the self-care of exercise and proper diet to treat hypertension and diabetes are no longer possible under the BOP's modified operational schedule. (R. 69 at 4.) While defendant accuses the government of ignoring his real argument, he fails to reply to the government's contention that the court was aware of and addressed this issue when the case was here originally. And he again offers no evidence in the reply in support of the claim that his conditions of confinement are so onerous as to warrant sentence reduction.

Defendant further states in reply that, while he "never argued that his risk of severe complications and death from COVID-19 is an extraordinary and compelling reason for compassionate release," he declined the vaccine for religious reasons. (R. 69 at 4-5.) He adds that the vaccine's effectiveness wanes over time requiring boosters, and that the Omicron variant is thought to evade COVID immunity from previous infection and vaccines. (R. 69 at 5-6.) The government having raised the issue, defendant contends that his risk of severe complications and death does, in fact, contribute to his extraordinary and compelling reasons for sentence reduction. (R. 69 at 6.)

Courts have generally held that a prisoner who declines the vaccine may not then obtain release based on the risk of severe illness from COVID-19. See, e.g., United States v. Ellis, No. 2:14-CR-33, 2022 U.S. Dist. LEXIS 30563, at *8-9 (N.D. Ind. Feb. 22, 2022) (collecting cases). Some courts have assumed the outcome could be different for prisoners who decline the vaccine for religious reasons. See, e.g., United States v. Brownlee, No. 21-2591, 2022 U.S.

13

App. LEXIS 348, at *4 (6th Cir. Jan. 4, 2022) (noting that a prisoner could perhaps justify his refusal to receive the vaccine based on "a sincerely held religious objection, an allergy to the vaccine, or another medical reason."); United States v. Smith, CR No. 16-137, 2021 U.S. Dist. LEXIS 120727, at *3 (W.D. Penn. June 29, 2021) ("There is no indication that his decision to refuse the vaccine was based upon a religious reason or a medical reason such as an allergy. Rather, he simply refused."). However, courts directly addressing the issue have not been receptive to such arguments. See, e.g., United States v. Anderson, No. 2:16-cr-00305, 2021 U.S. Dist. LEXIS 240344, at *2 (D. Nev. Dec. 16, 2021) ("Anderson is choosing not to take that step, and he is free to make that decision. However, refusing vaccination because of religious belief does not weigh in favor of compassionate release."); United States v. Weldon, No. 2:18-cr-112, 2021 U.S. Dist. LEXIS 209380, at *3 (D. Me. Oct. 29, 2021) (holding that an inmate claiming a religious exemption "may be entitled to decline the vaccine, but his refusal does not give him an advantage in seeking early compassionate release"); United States v. Moore, No. CR-15-50110, 2021 U.S. Dist. LEXIS 156028, at *8 (D. Ariz. Aug. 18, 2021) ("Whatever the reasons for his refusal, the Court will not allow Defendant to create an increased risk to himself—and therefore try to conjure an 'extraordinary and compelling' circumstance—by declining a readily available and overwhelmingly significant preventative measure."); United States v. Norville, No. 10 CR 1046, 2021 U.S. Dist. LEXIS 84221, at *5 (S.D.N.Y. May 2, 2021) ("Nor is the Court persuaded that Norville's religious beliefs, which would compel him to decline vaccination were it offered, constitute extraordinary and compelling circumstances, at least in light of Norville's age and health. The Court understands that vaccination can allay many individuals' concerns about the risk of developing severe illness from COVID-19.").

14

While the Seventh Circuit has not directly addressed the issue, language in the court's decisions suggests that release is available only for inmates medically unable to receive or benefit from the vaccine. United States v. Cross, No. 20-3524, 2021 U.S. App. LEXIS 38640, at *3 (7th Cir. Nov. 15, 2021) ("The government says that Cross has refused the vaccine, and Cross has not asserted that he is medically unable to receive or benefit from it."); Ugbah, 4 F.4th at 597 ("Ugbah has never contended that he is medically unable to receive or benefit from the available vaccines."); see also Broadfield, 5 F.4th at 803 ("A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). Defendant cites no authority to the contrary.

To be clear, the issue here is not whether to recognize a religious exemption to a vaccination mandate; as defendant concedes in reply, the "vaccine is not mandated" by the BOP. (R. 69 at 5.) The issue before the court is whether defendant can, having declined a measure that would significantly reduce his risk of an adverse outcome from a COVID-19 infection, obtain compassionate release from prison based on that risk (and/or the anxiety that accompanies it). Under the circumstances of this case, defendant's declination of the vaccine weighs against a finding of extraordinary and compelling reasons.

In his supplemental submission, defendant notes that on January 3, 2022, FCI Milan was placed on lock-down to prevent the further spread of COVID-19. He indicates that there are no longer any programs or work assignments he can participate in, and he is only given an hour of outside recreation per day. (R. 70 at 1.)

A check of the BOP's website reveals that FCI Milan is operating at "Level 3"—the

15

highest—due to COVID-19.[5]  On the other hand, the BOP currently reports no inmate or staff cases at FCI Milan.[6]  Of course, conditions may change again, as the virus continues to mutate and mitigation measures are modified in response.  It is difficult to conclude that such temporary changes, which impact all or most inmates at the facility, suffice to demonstrate extraordinary and compelling reasons for sentence reduction.

### c. Post-Sentencing Conduct

In his motion, defendant discusses his post-sentencing conduct under § 3553(a).  (R. 64 at 13.)  I summarize defendant's conduct below but note here that those efforts, while laudable, are not extraordinary.  Cf. Anderson, 2020 U.S. Dist. LEXIS 187983, at *13-18 (finding that extraordinary rehabilitation, combined with health issues, supported release).

In sum, defendant fails to demonstrate extraordinary and compelling reasons for sentence reduction.  For the sake of completeness, I also address the § 3553(a) factors.

### 3. Section 3553(a) Factors

Defendant argues that he poses no danger to society based on his PATTERN score and low level security designation within the BOP.  (R. 64 at 11-12, 45.)  He notes that the court can mitigate any remaining risk he poses by requiring home detention as a condition of supervised release.  (R. 64 at 12.)  Defendant further contends that reducing his sentence will not diminish deterrence or respect for the law, given the unforeseen circumstances of the pandemic.  (R. 64 at 12.)  Finally, defendant states that his post-sentencing conduct has been exemplary (working, enrolling in an apprenticeship program, mentoring younger inmates, and avoiding

---

[5]https://www.bop.gov/locations/institutions/mil/ (last visited Apr. 20, 2022).

[6]https://www.bop.gov/coronavirus/ (last visited Apr. 20, 2022).

16

discipline), and that he has a solid release plan in place (living with his mother, reuniting with the Muslim community, and seeking re-employment with the City of Milwaukee). (R. 64 at 13-14.)

In his motion, defendant says little about his prior record and the circumstances of this case. As the government notes, in 1998 defendant was sentenced to a lengthy state prison term for several robberies/carjackings. (PSR ¶ 44-45.) Released on parole in June 2016, he acquired a variety of ammunition in November 2017 (PSR ¶ 14) and by April 2019 was found to be in possession of several firearms, hundreds of rounds of ammunition, body armor, handcuffs, stun guns, rifle magazines, and gun accessories. (PSR ¶¶ 16-17.) As I noted in denying defendant's motion for pre-trial release in the underlying case, while there was no evidence that defendant used or intended to use the weapons to commit crimes, "his mere possession of this arsenal suggests danger. That he committed these offenses while on supervision also suggests that he will not abide by conditions of release designed to ensure the safety of the community." (R. 42 at 4.)

Those concerns remain valid today. Defendant possessed an alarming number of weapons, knowing it was illegal for him to do so, and while on community supervision. In reply, defendant argues that he is not a danger, noting that the government surveilled him for a period of time before taking action, and that he did not use the firearms to commit other crimes. (R. 69 at 6.) As indicated above, had he used the weapons, defendant may have faced an even greater penalty. At this point, defendant has served less than three years of his sentence, an insufficient amount of time to reflect the seriousness of his crime, provide adequate deterrence, and protect the public. See Saunders, 986 F.3d at 1078 (finding that the district court "permissibly ruled that excusing him from two-thirds of his sentence for this crime would not

17

promote respect for the law"); United States v. Land, 845 Fed. Appx. 461, 463 (7th Cir. 2021) (holding that the district court reasonably balanced the § 3553(a) factors when it ruled that the nature of the prisoner's offense, his previous record, and the unserved portion of his current prison term outweighed his recent rehabilitation and educational efforts).

Defendant notes in reply that he seeks a reduction in sentence, not necessarily immediate release. (R. 69 at 2, 8.) However, he does not identify a lesser term that would satisfy the purposes of sentencing. I decline defendant's invitation to simply reconsider the sentence without application of the mandatory minimum.[7]

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for sentence reduction (R. 64) is denied.

**IT IS FURTHER ORDERED** that the government's motion to seal defendant's medical records (R. 67) is granted.

Dated at Milwaukee, Wisconsin, this 20th day of April, 2022.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

[7] As indicated above, defendant's direct appeal is pending. Should defendant prevail in a challenge to the ACCA designation, the matter could be remanded for re-sentencing. This decision holds only that defendant has not demonstrated extraordinary and compelling reasons for immediate release, and that his argument for sentence reduction short of immediate release is insufficiently developed; I do not prejudge any arguments that might be made on remand. The parties do not discuss whether the pending appeal of the sentence affects this court's jurisdiction to rule on the instant motion. See United States v. Thompson, 510 F. Supp. 3d 633, 635 (N.D. Ill. 2020) (discussing the issue). In any event, pursuant to Fed. R. Crim. P. 37(a), the court may deny a motion it lacks authority to grant because an appeal has been docketed. Id. at 636.